# 04 - 80354

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA  **MIDDLEBROOKS**

CASE NO.

SECURITIES AND EXCHANGE COMMISSION,

              Plaintiff,

v.

DENNIS CROWLEY, SPEAR & JACKSON, INC.,
INTERNATIONAL MEDIA SOLUTIONS, LLC.,
YOLANDA VELAZQUEZ, and KERMIT SILVA,

              Defendants,

HOUNDSTOOTH, LTD., PITTSFIELD RESOURCES LTD.,
NORTHBASE LTD., BELLOW CAPITAL MANAGEMENT, LTD.,
RIVER GROUP HOLDINGS, CORP.,
ROLLING HILLS ENTERPRISES, LTD. a/k/a
ROLLINS HILLS ENTERPRISES LTD.,
ARDEN ENTERPRISES, INC., KIDZ, INC.,
PNC INVESTMENTS, INC., and TRITON ENTERPRISES,

              Relief Defendants.
_____/

MAGISTRATE JUDGE
JOHNSON



## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff, Securities and Exchange Commission ("SEC" or "Commission"), alleges the following:

### INTRODUCTION

1.     The Commission brings this emergency action to enjoin the ongoing fraud being committed by Defendants Dennis Crowley ("Crowley"), Spear & Jackson, Inc. ("Spear & Jackson"), International Media Solutions, LLC ("IMS"), Yolanda Velazquez ("Velazquez") and Kermit Silva ("Silva")(collectively "Defendants"). Since at least 2002, Crowley, the Chief Executive Officer of Spear & Jackson, has orchestrated a pump and dump scheme to manipulate the price of Spear & Jackson stock. Crowley reaped



illegal profits totaling over $3 million by falsely promoting ("pumping") the stock of Spear & Jackson, a company he controlled, and then selling ("dumping") his shares through brokerage accounts in the names of nominee companies based in the British Virgin Islands ("BVI").

2.     As part of his scheme, Crowley conspired with IMS, a stock promoter, and its principals Velazquez and Silva, to tout Spear & Jackson stock to the brokerage community.  Since early 2002, IMS and its team of unlicensed sales agents, have been using false information obtained from Crowley to tout the stock of Spear & Jackson to individual brokers.  Crowley compensated IMS with Spear & Jackson stock that he transferred from his BVI nominee companies.  IMS made over $1.6 million from its sale of Spear & Jackson stock.

3.     Moreover, Crowley has committed at least one similar scheme before.  In 2001, Crowley, used offshore nominee accounts to sell undisclosed stock in another public company, Sharp Holdings Corporation ("Sharp Holdings").  That scheme netted him at least $500,000 in profits.

4.     The fraud is continuing.  Crowley still holds Spear & Jackson stock in nominee accounts, and Spear & Jackson's filings with the Commission continue to misrepresent Crowley's ownership and transactions in Spear & Jackson stock.

## DEFENDANTS

5.     Spear & Jackson is a Nevada corporation with its principal office in Boca Raton, Florida.  Spear & Jackson is a garden and household tool manufacturing company with operations in the United Kingdom, France, Australia and New Zealand.  For the fiscal year ended September 30, 2003, it reported over $90 million in sales.  It is the surviving

entity of a September 2002 reverse merger between Spear & Jackson, Inc. and Megapro Tools, Inc., ("Megapro") a Canadian-based tool company. Spear & Jackson's common stock is registered with the Commission pursuant to Section 12(g) of the Exchange Act of 1934 ("Exchange Act") and is quoted on the Over-The-Counter ("OTC") Bulletin Board.

6.      Crowley is a resident of Highland Beach, Florida. Crowley is Spear & Jackson's current CEO, chairman of its board of directors, and owner of more than 50% of its outstanding stock.

7.      IMS is a privately held Florida limited liability company with its headquarters in Longwood, Florida. IMS purports to be an investor relations firm. IMS is not registered with the Commission in any capacity.

8.      Velazquez resides in Lake Mary, Florida. She is a principal of IMS.

9.      Kermit Silva resides in Orlando, Florida. He is a principal of IMS.

## RELIEF DEFENDANTS

10.     Houndstooth Ltd. is an International Business Company ("IBC") incorporated in the BVI by Crowley in or about August 1998. During 2002 and 2003, Houndstooth received 321,000 shares of Spear & Jackson stock, and sold approximately 137,000 of those shares for over $1.3 million in a brokerage account at a Florida based broker-dealer. On Crowley's orders, Houndstooth transferred 133,400 shares of Spear & Jackson stock to IMS between 2002 and 2003.

11.     Pittsfield Ltd. ("Pittsfield") is an IBC that Crowley incorporated in the BVI in or about September 2000. During 2002 and 2003, Pittsfield received 147,600 shares of Spear & Jackson stock, and sold 87,200 of those shares for over $340,000. On Crowley's orders, Pittsfield also transferred 574,500 shares of Spear & Jackson stock to

IMS.  In 2001, Pittsfield also owned over 460,000 shares of another Crowley-controlled company, Sharp Holdings.

12.     Northbase Ltd. ("Northbase") is an IBC located in the BVI that Crowley incorporated and controls.  Northbase maintains an account at a Florida-based broker-dealer, and at one time owned approximately 350,000 shares of Sharp Holdings.

13.     Bellow Capital Management Ltd. ("Bellow") is an IBC incorporated in the BVI by Crowley in or about January 2002.  During 2002 and 2003, Bellow received approximately 358,000 shares of Spear & Jackson stock, which it sold for almost $1 million in an account at a Florida-based broker-dealer.  On Crowley's orders, Bellow also transferred 123,500 shares of Spear & Jackson stock to IMS.

14.     River Group Holdings Corp. ("River Group") is an IBC that Crowley incorporated in the BVI in or about January 2002.  During 2002, River Group received 110,000 shares of Spear & Jackson stock, which it deposited into an account at a Canadian broker-dealer.

15.     Rolling Hills Enterprises Ltd. a/k/a Rollins Hills Enterprises Ltd. ("Rolling Hills") is an IBC that Crowley incorporated in the BVI.  Rolling Hills maintains an account at a Florida-based broker-dealer and at one time owned approximately 350,000 shares of Sharp Holdings.

16.     Arden Enterprises ("Arden") is a Nevada corporation that Crowley established in 1997.  Crowley is Arden's sole officer and director.  During 2002 and 2003, Arden received monies from bank accounts maintained by the BVI Companies and also owned 200,000 shares of Sharp Holdings.

4

17.    Kidz, Inc. ("Kidz") is a Nevada corporation that Crowley established in 1998. Crowley is Kidz's sole officer and director. Since August 2001, Kidz has received over $153,000 from bank accounts maintained by Crowley's BVI companies.

18.    PNC Investments, Inc. ("PNC") is a Nevada corporation that Crowley established in 1997. Crowley is PNC's sole officer and director. Crowley has used PNC to hold stock.

19.    Triton Enterprises ("Triton") is a Nevada corporation that Crowley established in 1997. Crowley is Triton's sole officer and director. During 2003, a bank account in Triton's name received at least one wire transfer from Rolling Hills.

## OTHER RELATED ENTITY

20.    Sharp Holdings is a software development company headquartered in Houston, Texas.  In January 2001, it completed a reverse merger with Celebrity Entertainment Group, Inc. ("Celebrity") a shell company controlled by Crowley.  Sharp Holding's stock is quoted on the OTC Bulletin Board.

## JURISDICTION AND VENUE

21.    This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d) and 22(a) of the Securities Act of 1933 ("Securities Act"), and Sections 21(d), 21(e), and 27 of the Securities Exchange Act.

22.    Defendants engaged in many of the acts and violations complained of herein within the Southern District of Florida, including soliciting investments in this district.  The principal offices of Spear & Jackson are located within the Southern District of Florida and Crowley resides within the District.

23.    Defendants, directly and indirectly, have made use of the means and

instrumentalities of interstate commerce, the means or instrument of transportation or communication in interstate commerce, and/or the mails, in connection with the acts, practices and courses of business complained of herein.

## FACTS

A.   **THE SPEAR AND JACKSON MERGER**

24.   Before September 2002, Spear & Jackson was a division of Jacuzzi Brands, Inc., a Florida-based company best known for its line of Jacuzzi hot tubs. In July 2001, Jacuzzi Brands decided to sell its non-core businesses, including Spear & Jackson.

25.   In September 2002, Megapro, a company that Crowley controlled, acquired Spear & Jackson through a reverse merger in which Spear & Jackson emerged as the surviving entity. As part of the merger, Crowley received approximately 6 million restricted shares of Spear & Jackson stock. According to Spear & Jackson's filings with the Commission, these shares are subject to a 2-year lock-up period that prevents Crowley from selling them.

26.   After the merger, Crowley became Spear & Jackson's CEO, president, and chairman of the board. Spear & Jackson began filing annual and periodic reports with the Commission in September 2002. Crowley also filed a Schedule 13D in September 2002 that disclosed his ownership of the 6 million restricted shares of Spear & Jackson.

27.   In addition to the 6 million shares he disclosed in Commission filings, Crowley illegally acquired over 1.2 million undisclosed shares of Spear & Jackson during 2002 and 2003. Crowley sold these shares through brokerage accounts in the names of the offshore nominee companies he controls, and has never disclosed his ownership or sale of these shares.

6

## B.   DEFENDANTS' PUMP AND DUMP SCHEME

**a.   Crowley Fraudulently Obtains S-8 Shares and Causes Megapro to File a False Form S-8**

28.   Crowley's fraudulent scheme started prior to the Megapro and Spear & Jackson merger.  In January 2002, Crowley secretly obtained 321,000 shares of stock in Megapro, through the fraudulent issuance of Form S-8 stock.  At that time, Megapro retained Crowley as a consultant to assist Megapro in exploring strategic opportunities. In return for Crowley's services, Megapro agreed to issue him Megapro shares.

29.   In order to disguise his interest in the Megapro stock, Crowley caused Megapro to issue the shares in the name of his nominee, Joseph Cranston.  Megapro filed a Form S-8 on January 30, 2002 registering the shares issued to Cranston.

30.   In actuality, Crowley owned and controlled the 321,000 shares purportedly given to Cranston and these S-8 shares wound up being transferred to one of Crowley's offshore nominee companies, Houndstooth.  Shortly after Megapro issued the shares to Cranston on January 30, 2002, and filed a Form S-8 registering those shares, Crowley received the stock certificate issued to Cranston at a post office box he controls. Crowley, through Houndstooth, ordered Megapro's transfer agent to cancel the Cranston certificate and reissue the certificate in the name of Houndstooth.  Those share were then deposited in Houndstooth's brokerage account.

**b.   Crowley Obtains Additional Undisclosed Spear & Jackson Shares**

31.   In addition to the Megapro shares, Crowley secretly acquired over 880,000 more Spear & Jackson shares.  Crowley held all of these shares in accounts in the names of the BVI Companies at Florida or at Canadian brokerage firms.

c.      **Crowley Retains IMS to Tout Spear & Jackson**

32.     Beginning in February 2002, Crowley retained IMS to promote Spear & Jackson.  IMS is a stock promoter that, in return for stock from the companies it promotes, employs sales agents to make unsolicited calls to registered representatives of broker-dealers around the country to tout the stocks of various companies.

33.     IMS sales agents received commissions from IMS based on the sale of stock by or to the registered representatives solicited by those sales agents.  IMS directed its sales agents to keep a trade log of all stock sales, including broker name, stock symbol, quantity, price, time, and date.  For some securities, including Spear & Jackson, IMS required its sales agents to obtain actual confirmations of transactions from the registered representatives in order to get paid for the solicitation.

34.     Before IMS commenced promoting Spear & Jackson, Crowley gave several presentations on the company to the IMS sales staff.  Crowley also conducted multiple calls with IMS sales agents and registered representatives solicited by IMS to provide information on upcoming events at Spear & Jackson.  During these various conference calls, Crowley encouraged retail buying in Spear & Jackson and claimed that Spear & Jackson would soon enter into contracts with "big box" retailers such as Lowe's, Home Depot and Sears.

35.     During 2002 and 2003, Velazquez and Silva offered sales agents higher commissions, cash bonuses, company shares, and other incentives if they promoted Spear & Jackson stock over the other stocks that IMS was promoting.  Velazquez instructed IMS sales agents, however, to tell the registered representatives they solicited that IMS

paid its sales agents a regular salary, not commissions.  Additionally, Velazquez provided the sales agents with scripts and promotional materials relating to Spear & Jackson.

### d.  Crowley and IMS Dump Spear & Jackson Stock on the Market

36.   Between  February  2002  and  July  2003,  Crowley  transferred approximately 315,000 shares of Spear & Jackson stock to IMS' brokerage account. During the same period that Crowley and IMS were promoting Spear and Jackson stock, they were selling Spear & Jackson stock that they secretly owned.  During these solicitations, neither Crowley nor IMS disclosed their concurrent sales of Spear & Jackson stock.

37.   IMS' promotional efforts dramatically increased the stock price of Spear & Jackson, and resulted in millions of dollars in illicit profits for both Crowley and IMS. Between January 2002 and August 2003, Spear & Jackson's share price rose from approximately $2 per share to almost $16 per share.  During this same time period, Crowley and IMS sold $3 million and $1.6 million, respectively, of Spear & Jackson stock.  Crowley has used most of the proceeds from the sale of the stock for personal use, including the purchase of over $250,000 worth of sports cars.

### e.  False Filings that Omitted Crowley's Share Ownership

38.   As a result of Crowley's undisclosed ownership of Spear & Jackson stock, numerous filings that he, Megapro, and Spear & Jackson made with the Commission are false.  For example, in connection with the September 2002 merger between Spear & Jackson and Megapro, Crowley filed a Schedule 13D with the Commission stating that as of September 6, 2002, he beneficially owned 6,005,561 shares of Megapro.  The filing

failed to disclose that, at that time, he owned at least 1 million additional Megapro shares that were held in the names of several of the Relief Defendants.

39.    Similarly, Crowley has never filed any Forms 3, 4 or 5 regarding the shares he holds in the offshore accounts.  Corporate insiders are required to file these forms to report their ownership of the issuer's stock when they become an insider and to report any changes in ownership.

40.    Spear & Jackson's annual reports filed with the Commission also include false information about the number of shares owned by Crowley.  In Spear & Jackson's Forms 10-KSB and amended Forms 10-KSB filed with the Commission for the fiscal years ended September 30, 2002 and September 30, 2003, the company reported that Crowley owned 6,005,561 shares of Spear & Jackson stock.  Crowley signed each of these filings pursuant to Rule 13a-14 of the Exchange Act and attested to their accuracy.

**f.    Crowley and IMS' Involvement With Sharp Holdings.**

41.    Before he orchestrated the Spear & Jackson pump-and-dump, Crowley profited from his undisclosed control of stock of another company, Sharp Holdings.  In 2000, Crowley purchased a shell company, Celebrity, whose common stock was registered with the Commission and installed a friend as its President to act as a strawman to hide his transfers of stock.

42.    In January 2001, Crowley arranged for a reverse merger between the shell and Sharp Holdings.  Crowley directed Celebrity's President to issue 60,000 shares of stock to Pittsfield.  In June 2000, Crowley ordered Celebrity's President to transfer 1,400,000 shares of stock to three of the Relief Defendants that Crowley controlled: Northbase, Arden Enterprises, and Rolling Hills Enterprises.

43.     Upon completion of the reverse merger, the BVI Companies controlled by Crowley owned almost 2 million shares of Sharp Holdings' stock.   Crowley never disclosed his ownership of those shares in any Commission filing.   In early 2001, Crowley began selling those shares, and has made at least $500,000 from those sales.

44.     During this same period, IMS was recommending the purchase of Sharp Holdings stock. IMS failed to disclose that at the same time it was promoting Sharp Holdings, it was selling its own shares of those stocks.

## COUNT I

## DEFENDANTS' FRAUD IN THE OFFER OR SALE OF SECURITIES IN VIOLATION OF SECTION 17(a)(1) OF THE SECURITIES ACT

45.     The Commission repeats and realleges its allegations set forth at paragraphs 1 through 44 of this Complaint as if fully restated herein.

46.     Since 2001, Defendants, directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, as described herein, knowingly, willfully or recklessly employed devices, schemes or artifices to defraud.

47.     The false statements and omissions made by Defendants, more fully described above, were material.  The Defendants knew, or were reckless in not knowing, that these material misrepresentations were false or misleading.

48.     By reason of the foregoing, Defendants have violated and unless enjoined, will continue to violate Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1).

## COUNT II

### DEFENDANTS' FRAUD IN VIOLATION OF SECTIONS 17(a)(2) AND 17(a)(3) OF THE SECURITIES ACT

49.     The Commission repeats and realleges its allegations set forth at paragraphs 1 through 44 of this Complaint as if fully restated herein.

50.     Since a date unknown but since at least January 2001, Defendants, directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by the use of the mails, in the offer or sale of securities, as described in this Complaint, have been: (a) obtaining money or property by means of untrue statements of material facts and omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or (b) engaging in transactions, practices and courses of business which are now operating and will operate as a fraud or deceit upon purchasers and prospective purchasers of such securities.

51.     By reason of the foregoing, Defendants, directly and indirectly, have violated and, unless enjoined, will continue to violate Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77(q)(a)(2) and 77(q)(a)(3)].

## COUNT III

### DEFENDANTS' FRAUD IN VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5 THEREUNDER

52.     The Commission repeats and realleges its allegations set forth in paragraphs 1 through 44 of this Complaint as if fully restated herein.

53.     Since a date unknown but since at least January 2001, Defendants, directly or indirectly, by use of the means and instrumentalities of interstate commerce or of the

12

mails, or of any facility of any national securities exchange, in connection with the purchase or sale of securities, as described herein, have knowingly, willfully or recklessly:  (i) employed devices, schemes or artifices to defraud; (ii) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (iii) engaged in acts, practices and courses of business which have operated, are now operating and will continue to operate as a fraud upon the purchasers of such securities.

54.    By reason of the foregoing, Defendants, directly or indirectly, violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R. § 240. 10b-5], thereunder.

**COUNT IV**

**SALE OF UNREGISTERED SECURITIES IN VIOLATION OF
SECTIONS 5(a) AND 5(c) OF THE SECURITIES ACT**

55.    The Commission repeats and realleges its allegations set forth in paragraphs 1 through 44 of this Complaint as if fully restated herein.

56.    Crowley secretly obtained 321,000 Megapro shares through the fraudulent issuance of Form S-8 stock and issued the stock to a nominee.  Because the Form S-8 is fraudulent, it never registered the 321,000 Megapro shares.  Crowley subsequently sold approximately 137,000 of those shares without properly registering them for sale, and transferred an additional 133,000 shares to IMS.  IMS inherited the restrictions on those shares, and violated the registration requirements when, on orders from Velazquez and Silva, it sold them.  Therefore, Spear & Jackson, Crowley, IMS, Silva, and Velazquez directly or indirectly violated Section 5 of the Securities Act.

57.     By reason of the foregoing, the Defendants, directly and indirectly, have violated, and unless enjoined, will continue to violate Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77c(c).

## COUNT V

### SPEAR & JACKSON AND CROWLEY'S
### FILING MISLEADING REPORTS IN VIOLATION OF SECTION 13(a) OF THE EXCHANGE ACT AND RULES 13a-1 AND 12b-20 THEREUNDER

58.     The Commission repeats and realleges its allegations set forth at paragraphs 1 through 44 of this Complaint as if fully restated herein.

59.     Since 2002, Megapro and Spear & Jackson have been reporting companies, subject to the provisions of Section 13(a) of the Exchange Act. Accordingly, at the time Megapro and Spear & Jackson filed their periodic, interim and annual reports with the Commission they were subject to the requirements of Section 13(a) of the Exchange Act and the rules thereunder. Spear & Jackson violated Section 13(a) of the Exchange Act and Rules 12b-20 and 13a-1 thereunder when it filed these false and misleading reports with the Commission.

60.     Crowley is Spear & Jackson's majority shareholder, chairman of the Board of Directors and CEO, and controls the day-to-day management of the Company. Crowley is also responsible for Spear & Jackson's public statements and filings. Thus, Crowley is directly liable for these violations of Section 13(a) and Rules 12b-20 and 13a-1 thereunder, pursuant to Section 20(a) of the Exchange Act, which provides liability for every person who, directly or indirectly, controls any person liable under any provision or rule of the Exchange Act.

14

61.     Crowley submitted various filings to the Commission knowing that those filings omitted to disclose the existence of and nature of the stock transfer to Crowley. Crowley, as Spear & Jackson's principal executive officer, also signed false personal certifications pursuant to Rule 13a-14 under the Exchange Act which were attached to Spear & Jackson's annual reports with the Commission.  These certifications attested to the accuracy of Spear & Jackson's filings, when as Crowley knew those filings misstated his ownership of Spear & Jackson stock.

62.     As a result of the conduct described above, Spear & Jackson and Crowley violated Section 13(a) of the Exchange Act [15 U.S.C. §§78m(a)] and Rules 13a-1 and 12b-20 thereunder [17 C.F.R. §§240.13a-1 and 240.12b-20], and Crowley also violated Rule 13a-14 of the Exchange Act [17 C.F.R. §240.13a-14].

## COUNT VI

### CROWLEY'S VIOLATIONS OF SECTIONS 13(d) AND 16 (a) OF THE EXCHANGE ACT AND RULES 13d-1 AND 16a-3 THEREUNDER

63.     The Commission repeats and realleges its allegations set forth at paragraphs 1 through 44 of this Complaint as if fully restated herein.

64.     Both Spear & Jackson and Megapro are or were Section 12 reporting companies. Crowley exceeded the 5 percent threshold set forth in Section 13(d) in April 2002, but did not file a Schedule 13D with the Commission disclosing his ownership of Spear & Jackson or Megapro stock until September 6, 2002. The Schedule 13D filed on September 6, 2002, misstated the amount of shares Crowley held in Megapro and Spear & Jackson. When Crowley sold his shares, he failed to amend his Schedule 13D, nor did he disclose the transactions in any Forms 4 or 5 as required by Section 16(a) of the Exchange Act or Rule 16a-3 thereunder.

15

65.    As a result of the conduct described above, Crowley violated Sections 13(d) and 16(a) of the Exchange Act and Rules 13d-1 and 16a-3 thereunder.

## COUNT VII

## IMS, VELAZQUEZ AND SILVA'S VIOLATIONS OF SECTION 17(b) OF THE SECURITIES ACT

66.    The Commission realleges and repeats its allegations set forth at paragraphs 1 through 44 of this Complaint as if fully restated herein.

67.    Since a date unknown but since at least January 2001, IMS, through its principals Velazquez and Silva, by the use of the means or instruments of transportation or communication in interstate commerce or by the use of the mails, published, gave publicity to, or circulated communications that, though not purporting to offer securities for sale, described certain securities.

68.    IMS, Velazquez and Silva, received stock-based compensation for promoting the stock of Sharp Holdings, Megapro and Spear & Jackson and did not fully disclose the past or future receipt of such consideration and the amount thereof.

69.    By reason of the foregoing, IMS, Velazquez and Silva, directly or indirectly, have violated and, unless enjoined, will continue to violate, Section 17(b) of the Securities Act, 15 U.S.C. § 77q(b).

## COUNT VIII

## IMS, VELAZQUEZ AND SILVA'S VIOLATIONS OF SECTION 15(a) OF THE EXCHANGE ACT

70.    The Commission realleges and repeats its allegations set forth at paragraphs 1 through 44 of this Complaint as if fully restated herein.

16

71.    By contacting registered representatives of broker-dealers to encourage them to sell Sharp Holdings, Megapro and Spear & Jackson stock to the broker-dealers' clients, and by compensating their sales agents with commissions, IMS, Velazquez and Silva, have acted as brokers-dealers and have made use of the mails or other means or instruments of interstate commerce to effect transactions in, or induce the purchase of, these investment contracts.

72.    IMS is not registered with the Commission as a broker or dealer, nor are Velazquez or Silva.

73.    By reason of the foregoing, IMS, Velazquez and Silva, and each of them, have violated and are violating Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)].

## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that the Court:

### I.

### Declaratory Relief

Declare, determine and find that Defendants have committed the violations of the federal securities laws alleged herein.

### II.

### Temporary Restraining Order, Preliminary Injunction and Permanent Injunctive Relief

Issue a Temporary Restraining Order, a Preliminary Injunction and a Permanent Injunction, restraining and enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, from violating Sections 5(a), 5(c), 17(a) and 17(b) of the Securities Act,

and Sections 10(b), 13(a), 13(d), 15(a) and 16(a) of the Exchange Act and Rules 10b-5, 12b-20, 13a-1, 13a-14, 13d-1 and 16a-3, thereunder, as appropriately indicated above.

## III.

### Asset Freeze and Accountings

Issue an Order temporarily freezing the assets of all Defendants and all Relief Defendants until further Order of the Court and requiring Defendants to file with this Court, within five business days, verified written accountings, signed by each Defendant under penalty of perjury.

## IV.

### Appoint a Corporate Monitor

Issue an Order appointing a Corporate Monitor over Spear & Jackson to oversee its operations, and any other duties the Court deems appropriate.

## V.

### Surrender of Passports

Issue an Order requiring Crowley, Velazquez and Silva to temporarily surrender their passports and them prohibiting from traveling outside the United States until further order of this Court.

## VI.

### Records Preservation and Expedited Discovery

Issue an Order requiring the Defendants to preserve any records related to the subject matter of this lawsuit that are in their custody, possession or subject to their control, and to respond to discovery on an expedited basis.

## VII.

### Disgorgement

Issue an Order directing Defendants to disgorge all profits or proceeds that they have received as a result of the acts and/or courses of conduct complained of herein, with prejudgment interest thereon.

## VIII.

### Penalties

Issue an Order directing all Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act, 15 U.S.C. § 78(d)(3).

## IX.

### Repatriation

Issue an Order requiring Crowley to take such steps as are necessary to repatriate to the territory of the United States all funds and assets of investors described in the Commission's Complaint in this action which are held by him or are under his direct or indirect control, and deposit such funds into the registry of the United States District Court for the Southern District of Florida, and provide the Commission and the Court a written description of the funds and assets so repatriated.

## X.

### Officer and Director Bar

Pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], issue an Order temporarily and permanently barring Crowley from acting as an officer or director of any issuer that has a class of securities registered with the Commission

19

pursuant to Section 12 of the Exchange Act [15 U.S.C. § 781], or that is required to file reports under Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)], depriving Crowley of his ability to vote the Spear & Jackson shares he owns or controls, and depriving Crowley of authority over any bank accounts in the name of or for the benefit of Spear & Jackson.

## XI.

### Penny Stock Bar

Issue an Order barring Crowley, Velazquez and Silva from participating in an offering of a penny stock pursuant to Sections 20(g) and 22(a) of the Securities Act, and Section 21(d)(6) of the Exchange Act.

## XII.

### Retention of Jurisdiction

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that may hereby be entered, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

April 15, 2004                                    Respectfully submitted,

                                    By:   _____
                                          Alise Johnson, Esq.
                                          Florida Bar No. 0003270
                                          Direct Dial: (305) 982-6322
                                          johnsona@sec.gov
                                          Attorneys for Plaintiff
                                          SECURITIES AND EXCHANGE
                                          COMMISSION
                                          801 Brickell Avenue, Suite 1800
                                          Miami, Florida 33131
                                          Telephone: (305) 982-6300
                                          Facsimile: (305) 536-4154

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET 80354

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

SECURITIES AND EXCHANGE COMMISSION

CIV-MIDDLEBROOKS

DEFENDANTS
DENNIS C. STEPHAN, PHILIP E. JACKSON, INC.,
INTERNATIONAL MEDIA SOLUTIONS, YOLANDA
VELAZQUEZ, AND KERMIT SILVA, et al.

MAGISTRATE JUDGE

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

WPB 04cv80354 (written)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   PALM BEACH
(IN U.S. PLAINTIFF CASES ONLY)
NOTE   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Alise M. Johnson, Esq. (305) 982-6322
Paul N. Anderson, Esq. (305) 982-6313
SEC - 801 Brickell Avenue, Suite 1800
Miami, Fl. 33131

ATTORNEYS (IF KNOWN)

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:   DADE,   MONROE,   BROWARD,   PALM BEACH,   MARTIN,   ST. LUCIE,   INDIAN RIVER,   OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION   (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN   (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT   (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | B☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury Product Liability | B☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | B☐ 630 Liquor Laws | | B☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | B☐ 640 R.R. & Truck | **A PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | B☐ 650 Airline Regs | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| B☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | B☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | B☐ 690 Other | ☐ 840 Trademark | ☒ 850 Securities/Commodities/ Exchange |
| B☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **A LABOR** | **B SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | B☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| B☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | B☐ 530 General | | A☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | B☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | A☐ 871 IRS - Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | B☐ 540 Mandamus & Other | | | A OR B |
| ☐ 290 All Other Real Property | | B☐ 550 Civil Rights | | | |
| | | B☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION   (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

15 U.S.C. § 77q(a)(1); 15 U.S.C. §§ 77q(q)(a)(2) and 77(q)(a)(3); 15 U.S.C. § 78j(b), 17 C.F.R. 240.10b-5; 15 U.S.C. §§ 77c(a) and 77c(c); 15 U.S.C. §§ 78m(a), 17 C.F.R. §§ 240.13a-1, 13a-14, and 240.12b-20.   Violations of the federal securities laws.

LENGTH OF TRIAL via 10 days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND: TRO, Asset Freeze, Perm. Inj., Disg., Civil Penalties

CHECK YES only if demanded in complaint
JURY DEMAND:   ☐ YES   ☒ NO

## VIII. RELATED CASE(S) IF ANY   (See instructions)

JUDGE   Joan A. Lenard

DOCKET NUMBER   04-20654-CIV

DATE   April 15, 2004

SIGNATURE OF ATTORNEY OF RECORD   Alise M. Johnson, Senior Trial Counsel

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____